UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OLAMIDE SOYINKA, | ) | |
| | ) | |
| Plaintiff, | ) | 20 C 1773 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Olamide Soyinka sues Equifax Information Services, LLC under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, alleging that it failed to reinvestigate and remove inaccurate debt information on her credit report. Doc. 1. Equifax moves under Civil Rule 12(b)(6) to dismiss the complaint. Doc. 16. The motion is granted.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Soyinka's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013). The facts are set forth as favorably to Soyinka as those materials allow. *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

1

The disputed debt arises from a credit card account that Soyinka opened with Credit One Bank. Doc. 1 at ¶ 6; Doc. 25 at 2. At some point, LVNV Funding claimed that it had purchased the account and began sending Soyinka dunning letters. Doc. 1 at ¶ 7. Soyinka replied to LVNV in a letter dated June 12, 2019, stating that she was insolvent and that the debt amount LVNV asserted was inaccurate. Doc. 1-1 at 4. LVNV did not respond. Doc. 1 at ¶ 10. In a second letter to LVNV dated October 22, 2019, Soyinka again stated that she was insolvent and that the asserted debt amount was incorrect. She also explained that she had "never opened an account with your company" and asked for "a copy of the purchase and sale agreement giving your company the right to collect this debt." Doc. 1-1 at 7. LVNV did not respond with any documents confirming its purchase of Soyinka's debt. Doc. 1 at ¶¶ 12-13. Throughout that time, LVNV had been reporting the details of Soyinka's credit card account to Equifax as a debt owed to LVNV. Doc. 1 at ¶¶ 8, 11, 13.

Before proceeding, a brief word about terminology under the FCRA. Soyinka is a "consumer." 15 U.S.C. § 1681a(c). Equifax is a "consumer reporting agency" that generates "consumer reports," the more familiar term being "credit report." *Id*. § 1681a(d), (f). A credit report compiles information provided by "furnishers," 12 C.F.R. § 1022.41(c), which typically are the consumer's creditors (here, LVNV). The industry calls individual entries on a credit report "tradelines." *Rhone v. Med. Bus. Bureau, LLC*, 915 F.3d 438, 440 (7th Cir. 2019).

Soyinka wrote to Equifax on November 21, 2019 to dispute the LVNV tradeline on her credit report, claiming that Equifax was "reporting inaccurate information" concerning the debt and asking Equifax to remove it from the report. Doc. 1-1 at 2; Doc. 1 at ¶ 14. Soyinka explained that she had twice written to LVNV that "the debt they are reporting is not accurate," but that LVNV had continued to report it without noting any dispute. Doc. 1-1 at 2. Soyinka

stated that LVNV's failure to note a dispute violated "various state and federal statutes" and warned Equifax not to "rely on information provided by furnishers who violate federal and state law." *Ibid*.

Upon receiving Soyinka's dispute, Equifax notified LVNV, which sent back confirmation of the tradeline via "ACDV." Doc. 1 at ¶¶ 32-34. The complaint does not define that acronym, but the court takes notice that it refers to "automated consumer dispute verification," an electronic system that allows reporting agencies quickly to verify information with furnishers. *See* Consumer Fin. Prot. Bureau, Key Dimensions and Processes in the U.S. Credit Reporting System 32 (Dec. 2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf; *Denan v. Trans Union LLC*, 959 F.3d 290, 294 n.3 (7th Cir. 2020) (taking judicial notice of that CFPB report). Equifax has retained the tradeline in Soyinka's credit report without noting any dispute. Doc. 1 at ¶ 36.

Soyinka filed this suit in March 2020. Doc. 1. She alleges that "the debt is not owed," which the court construes in her favor as an allegation that LVNV does not own the debt. *Id*. at ¶ 26. Soyinka's sole claim is that Equifax undertook an "unreasonable reinvestigation" into the tradeline under two sections of the FCRA, §§ 1681e(b) and 1681i(a). *Id*. at ¶¶ 39-49.

**Discussion**

Sections 1681e(b) and 1681i(a) require consumer reporting agencies to adopt processes to ensure that the information they report is accurate. Section 1681e(b) directs agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" they include in credit reports. 15 U.S.C. § 1681e(b). If a consumer notifies an agency of a dispute concerning a tradeline, § 1681i(a) requires the agency to "conduct a reasonable reinvestigation to

3

determine whether the disputed information is inaccurate" and specifies procedures for the agency to notify the furnisher, conduct a reinvestigation, and resolve the dispute. *Id*. § 1681i(a).

The Seventh Circuit recently addressed in *Denan v. Trans Union*, *supra*, what §§ 1681e(b) and 1681i(a) require of consumer reporting agencies. Joining several other circuits, the Seventh Circuit held that the terms "accuracy" and "inaccurate" in those provisions refer only to factual errors, not to legal defenses to the debt. *Denan*, 959 F.3d at 296 (citing *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir. 2010); and *Wright v. Experian Info. Sols., Inc.*, 805 F.3d 1232, 1244 (10th Cir. 2015)). Thus, while § 1681e(b) requires agencies to adopt "'reasonable procedures' to ensure accuracy," it does not require them to evaluate "non-adjudicated legal defenses to [consumers'] debts." *Id*. at 295. Likewise, while § 1681i(a) "requires consumer reporting agencies to 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate,'" they are "neither qualified nor obligated to resolve legal issues." *Id*. at 296. The consumers in *Denan* had taken out payday loans that, they argued, violated state usury laws, such that the tradelines on their credit reports were "legally inaccurate." *Id*. at 292-93. The Seventh Circuit affirmed judgment on the pleadings for the reporting agency because the consumers did not allege that their credit report "contained inaccurate information" within the meaning of §§ 1681e(b) and 1681i(a). *Id*. at 298. As discussed in detail below, *Denan* restricts the terms "accuracy" and "inaccurate" in those provisions to factual issues because consumer reporting agencies are neither competent nor obligated to resolve legal disputes: "Only a court can fully and finally resolve the legal question of a loan's validity." *Id*. at 295.

Soyinka alleges that LVNV does not own her credit card debt. Doc. 1 at ¶ 26. The parties agree that the central question here is whether that allegation, if true, would result in her

4

Equifax credit report being inaccurate within the meaning of the FCRA. Doc. 16 at 6; Doc. 25 at 3. If Soyinka's argument about who owns her credit card debt raises a legal dispute, then *Denan* dictates dismissal. Several decisions in this District have cited *Denan* in dismissing materially identical lawsuits on the ground that questions regarding the ownership of debts present only legal issues. *See Juarez v. Experian Info. Sols., Inc.*, 2020 WL 5201798 (N.D. Ill. Aug. 31, 2020); *Molina v. Experian Info. Sols., Inc.*, 2020 WL 4748149 (N.D. Ill. Aug. 17, 2020); *Hoyos v. Experian Info. Sols., Inc.*, 2020 WL 4748142 (N.D. Ill. Aug. 17, 2020); *Rodas v. Experian Info. Sols., Inc.*, 2020 WL 4226669 (N.D. Ill. July 23, 2020); *Chuluunbat v. Cavalry Portfolio Servs., LLC*, 2020 WL 4208106 (N.D. Ill. July 22, 2020).

Soyinka maintains that those cases were wrongly decided because they overlook or discount Seventh Circuit decisions—*Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714 (7th Cir. 2003), and *In re Meyer*, 151 F.3d 1033, 1998 WL 538160 (7th Cir. 1998) (unpub.)—holding that the assignment and ownership of debts are questions of fact, not law. Doc. 25 at 4-6. *Meyer* was an unpublished order issued before January 1, 2007, so the court will not discuss it further. *See* 7th Cir. R. 32.1(d) ("No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion … or to establish the law of the case … ."). In *Chemetall*, an Illinois contract case brought under the diversity jurisdiction, the Seventh Circuit held that the assignment of a right depends on the parties' intent, and that intent is a "question of fact to be derived not only from the instrument executed by the parties, but also from the surrounding circumstances." *Id*. at 720-21 (citation omitted).

At first glance, that passage from *Chemetall* lends support to Soyinka's view that whether Credit One assigned to LVNV its interest in her debt is a question of fact. But that appearance is deceiving, as the contours of the law-fact distinction vary depending on context. In a habeas

5

case, the Supreme Court explained that drawing the law-fact line calls for a practical judgment specific to the matter in question:

> Perhaps much of the difficulty in this area stems from the practical truth that the decision to label an issue a "question of law," a "question of fact," or a "mixed question of law and fact" is sometimes as much a matter of allocation as it is of analysis. At least in those instances in which Congress has not spoken and in which the issue falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question.

*Miller v. Fenton*, 474 U.S. 104, 113-14 (1985) (citing Henry P. Monaghan, *Constitutional Fact Review*, 85 Colum. L. Rev. 229, 237 (1985)). The Seventh Circuit has expressed similar sentiments. *See Ward v. Sternes*, 334 F.3d 696, 701 (7th Cir. 2003) (observing that "many square issues [do] not fit neatly into the round holes of pure fact or pure law"); *Ind. Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1182 (7th Cir. 1990) ("[T]rials are to determine facts, not law. More precisely—for there is no sharp line between 'law' and 'fact'—trials are to determine adjudicative facts rather than legislative facts."); *Weidner v. Thieret*, 866 F.2d 958, 961 (7th Cir. 1989) ("It is nowhere written that the law-fact distinction must be treated the same in 28 U.S.C. § 2254(d) and in Fed. R. Civ. P. 52(a). 'Law' and 'fact' do not in legal discourse denote pre-existing things; they express policy-grounded legal conclusions.").

For purposes of this case, the court need not fix as an abstract and general proposition whether ownership of a debt is "legal" or "factual." The correct—and more limited—question is whether, within the meaning of the FCRA, the complaint alleges a factual issue regarding the "accuracy" of the pertinent tradeline in Equifax's credit report. The First Circuit in *DeAndrade* was the first appeals court to recognize the distinction between factual inaccuracies and legal defenses in this context. *See DeAndrade*, 523 F.3d at 68-69. Shortly after *DeAndrade* issued, a district court in the First Circuit observed that "classifying a dispute over a debt as 'factual' or

'legal' will usually prove a frustrating exercise." *Cornock v. Trans Union LLC*, 638 F. Supp. 2d 158, 163 (D.N.H. 2009).

The consumer in *Cornock* claimed that "he did not sign the credit card application as a matter of fact," but the reporting agency retorted that he meant that "he therefore had no liability as a matter of law." *Ibid*. As the *Cornock* court observed, that dispute has "both a factual component … and a legal component." *Id*. at 164. The same is true here: Soyinka states that LVNV lacks the correct paperwork establishing its ownership of her debt as a matter of fact, and LVNV claims that it owns her debt as a matter of law. The *Cornock* court solved this puzzle by recognizing that the law-fact divide in the FCRA context turns on the institutional competence of consumer reporting agencies: "*DeAndrade* teaches that the FCRA imposes no obligation on consumer reporting agencies to resolve 'questions that can only be resolved by a court of law.'" *Id*. at 165 (quoting *DeAndrade*, 523 F.3d at 68); *see also Juarez*, 2020 WL 5201798, at *4 ("[T]he Court must look to whether [the agency] 'could have uncovered the inaccuracy if it had reasonably' investigated the issue.") (quoting *DeAndrade*, 523 F.3d at 68).

*Cornock* correctly holds that the key criterion in distinguishing fact from law in the FCRA context is the consumer reporting agency's capacity to resolve a given dispute. *Denan* repeatedly emphasized that reporting agencies have no ability to resolve legal disputes between consumers and creditors, such as the consumer's submission there that the reported debts arose from loans that violated state usury laws. 959 F.3d at 293. *Denan* explained that the FCRA "imposes duties on consumer reporting agencies and furnishers in a manner consistent with their respective roles in the credit reporting market." *Id*. at 294. *Denan* added that the FCRA's implementing regulations require only furnishers, not reporting agencies, to ensure that debt information "correctly [r]eflects … liability for the account." *Id*. at 295 (citing 12 C.F.R.

§ 1022.41(a)). And *Denan* made clear that reporting agencies are not "tribunals," so "[t]he power to resolve these legal issues exceeds [their] competencies," as "[o]nly a court can fully and finally resolve the legal question of a loan's validity." *Ibid*. (citing *DeAndrade*, 523 F.3d at 68). In sum, *Denan* concluded: "Because no formal adjudication discharged plaintiffs' debts, no reasonable procedures could have uncovered an inaccuracy in plaintiffs' credit reports." *Id*. at 296. Thus, for purposes of the FCRA, a reporting agency's competence to resolve the dispute at issue is what divides law from fact. *Cf. Miller*, 474 U.S. at 114 (holding that the law-fact distinction depends on which actor is "better positioned … to decide the issue in question").

A dispute that would be primarily "factual" in court may still exceed the capacities of a consumer reporting agency, and thus pose a legal question under the FCRA. *Brill v. TransUnion LLC*, 838 F.3d 919 (7th Cir. 2016), though predating *Denan*, provides a good example. Alleging that a reporting agency violated § 1681i(a), the plaintiff there claimed that his ex-girlfriend had forged his signature on an automobile lease and then missed lease payments, negatively affecting his credit report. *Id*. at 920. If the plaintiff had sued the ex-girlfriend rather than the reporting agency, then the question whether she forged the lease would present a question of fact for the factfinder. Yet the district court dismissed the suit, reasoning that "whether [the plaintiff's] signature on the 2013 lease extension is a forgery is a legal question that [the reporting agency] could not resolve through reinvestigation." *Brill v. Trans Union LLC*, 2015 WL 9095103, at *4 (W.D. Wis. Dec. 16, 2015). And the Seventh Circuit affirmed, holding that the agency was not obliged to resolve that question, rejecting the plaintiff's attempt to "shift the burden of proof to" the agency by "invok[ing] the statutory duty of reinvestigation." *Brill*, 838 F.3d at 921.

Conversely, some defenses to debts that might be deemed "legal" in other contexts fall within a consumer reporting agency's competence, and thus pose factual questions under the

8

FCRA.  In *Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994), an Indiana consumer alleged that two consumer reporting agencies erroneously listed a money judgment against him. *Id*. at 282-83.  The Seventh Circuit examined the relevant state court documents and concluded that, "[u]nder Indiana law," no money judgment had been "officially *entered*," though one had been "erroneously *noted*." *Id*. at 285.  Although such fine-grained interpretation of court documents might seem quintessentially legal, the Seventh Circuit held that the reporting agencies could be liable under § 1681i(a) because "a credit reporting agency may be required, in certain circumstances, to verify the accuracy of its initial source of information." *Id*. at 287.  Similarly, in *Dennis v. BEH-1, LLC*, 520 F.3d 1066 (9th Cir. 2008), the Ninth Circuit reversed a grant of summary judgment to a reporting agency on §§ 1681e(b) and 1681i(a) claims where the reporting agency had misinterpreted state court documents. *Id*. at 1069-70.  As an Indiana district court recognized, *Dennis* implies "some duty" on the part of reporting agencies "to train their employees to understand[] the legal significance and effect of the documents they rely upon." *Edwards v. Equifax Info. Servs., LLC*, 2018 WL 1748132, at *10 (S.D. Ind. Mar. 13, 2018), *report and recommendation adopted*, 2018 WL 1745965 (S.D. Ind. Apr. 11, 2018).

Applying those principles here, Soyinka has no viable claim against Equifax.  At most, §§ 1681e(b) and 1681i(a) obligate consumer reporting agencies to investigate and resolve straightforward disputes, such as the contents of a document, the existence and easily ascertained meaning of court orders, or some other truly objective matter. *See Denan*, 959 F.3d at 297 (describing "the inaccuracy challenged in *Henson* (whether a judgment was issued against the consumer)" as "straightforward" and "fact-based"); *Rodas*, 2020 WL 4226669, at *2 (observing that a consumer's allegations of "inaccurate amounts, tradeline items not immediately removed once vacated, and inaccurately updated loan terms" would raise factual disputes, not legal

9

disputes). To avoid dismissal, then, a consumer must identify a straightforward dispute that the reporting agency failed to resolve or investigate. *See Denan*, 959 F.3d at 297 (affirming dismissal where complaint "pleaded only speculative legal inaccuracies").

Soyinka has not done that here. She argues, at a high level of generality, that LVNV does not own the debt in question. Doc. 1 at ¶ 26; Doc. 25 at 3. She does not point to a discrete issue that Equifax, rather than a legal tribunal, could be expected to resolve. Her case thus falls squarely under the Seventh Circuit's holding in *Denan* that consumers must take to courts, not to consumer reporting agencies, such legal defenses to their debts.

## Conclusion

Equifax's motion to dismiss is granted. The dismissal is with prejudice, as the court can discern no amendment that would cure the flaw in Soyinka's claims, and Soyinka herself does not request leave to amend in the event of dismissal. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint.").

September 15, 2020

United States District Judge